**No. 24-14151**

---

**In the
United States Court of Appeals
for the Eleventh Circuit**

---

**Jacki Pick,**

*Appellant,*

**v.**

**Bradford Jay Raffensperger,**

*Appellee.*

---

**Appeal from the United States District Court
for the Northern District of Georgia**
*Hon. Eleanor L. Ross, United States District Judge*

---

**REPLY BRIEF OF APPELLANT**

---

Brandy R. Manning
bmanning@condontobin.com
Aaron Z. Tobin
atobin@condontobin.com
Leah K. Lanier
llanier@condontobin.com
A. Gage Taylor
gtaylor@condontobin.com
**CONDON TOBIN SLADEK SPARKS
NERENBERG PLLC**
8080 Park Ln., Suite 700
Dallas, TX 75231
Telephone: 214.265.3800
Facsimile:  214.691.6311

*Attorneys for Appellant*

1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 7

ARGUMENT ........................................................................................... 9

I.    The improper transfer from Gainesville to Atlanta violated local rules and Pick's due process rights. ................ 9

II.    Pick plausibly alleged claims for defamation and false light. ........................................................................... 12

    A.    Raffensperger failed to address the plausibility of Pick's Complaint; at best, he raised an alternative factual interpretation of *Integrity Counts*, underscoring the trial court's error ............... 12

    B.    Pick plausibly alleged that Raffensperger's defamatory statements are "of and concerning" her, and Raffensperger's insistence that *Integrity Counts* targets only Giuliani contradicts the plain text and cannot defeat those allegations at the pleading stage. ..................... 13

    C.    Pick plausibly alleged that Raffensperger's statements were neither substantially true nor rhetorical hyperbole and are defamatory ................... 19

        1.    Pick plausibly alleged that Raffensperger's allegations of deceptive editing to remove evidence are not figurative ....................................... 19

        2.    Pick plausibly alleged that Raffensperger misrepresented Pick's use of the term "suitcases," amplifying a false narrative ...................................... 22

    D.    Pick plausibly alleged actual malice ........................... 23

        1.    Pick plausibly alleged that Raffensperger either knew that his defamatory statements were false or recklessly disregarded their truth. ........................... 24

30302970v1 97410.002.00

2.    Raffensperger failed to distinguish Veritas. ..............26

3.    Raffensperger knew that "suitcase" was common field jargon, and that Pick used it as such. ................28

III.    Pick's false light claim is timely under Georgia's renewal statute and the federal relation-back doctrine..................................................................................29

CONCLUSION ..........................................................................32

30302970v1 97410.002.00

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allstate Ins. Co. v. James*,
    779 F.2d 1536 (11th Cir. 1986) ...................................................... 31

*Andrews v. D'Souza*,
    696 F. Supp. 3d 1332 (N.D. Ga. 2023) ..................................... 14, 30

*Baker v. GOSI Enterprises, Ltd.*,
    830 S.E.2d 765 (Ga. Ct. App. 2019) .............................................. 29

*Bell v. Johnson Pub. Co., LLC*,
    2018 WL 357888 (M.D. Ga. Jan. 10, 2018) ................................... 14

*Bennett v. Hendrix*,
    325 Fed. Appx. 727 (Ga. Ct. App. 2009) ....................................... 21

*Bollea v. World Championship Wrestling*,
    271 Ga. App. 555 (2005) .......................................................... 30, 31

*Cox Enterprises v. Bakin*,
    206 Ga. App. (1992) .......................................................... 16, 17, 18

*Crowe v. Henry*,
    43 F.3d 198 (5th Cir. 1995) ...................................................... 13, 17

*Curles v. Psychiatric Solutions*,
    808 S.E.2d 237 (Ga. Ct. App. 2017) .............................................. 30

*Doe v. A360 Media LLC*,
    2023 U.S. Dist. LEXIS 238125, at *3, 2023 WL
    11796095 (N.D. Ga.) .................................................................... 10

*Equity Prime Mortgage, LLC v. Greene for Congress, Inc.*,
    908 S.E.2d 717 (Ga. Ct. App. 2024) .............................................. 20

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ...................................................................... 10

*Holmes v. Clisby*,
    45 S.E. 684 (Ga. 1903) .................................................................. 14

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002) ............................................... 16, 18

4

*Horsley v. Rivera*,
    292 F.3d 695 (11th Cir. 2002) ........................................................ 20

*In re Ricoh Corp.*,
    870 F.2d 570 (11th Cir.1989) ........................................................ 10

*Internap Corp. v. Noction Inc.*,
    114 F. Supp. 3d 1336 (N.D. Ga. 2015) ..................................... 11, 12

*Jester v. Emerson Climate Techs., Inc.*,
    849 Fed. Appx. 849 (11th Cir. 2021) ............................................. 29

*Krass v. Obstacle Racing Media, LLC*,
    2021 WL 4824110 (N.D. Ga. Feb. 2, 2021) ................................... 31

*Maples v. Nat'l Enquirer*,
    763 F. Supp. 1137 (N.D. Ga. 1990) ............................................... 31

*McBeth v. United Press Intern., Inc.*,
    505 F.2d 959 (5th Cir. 1974) .................................................... 15, 16

*Moore v. Cecil*,
    109 F.4th 1352 (11th Cir. 2024) ................................................... 27

*Moore v. McKibbon Bros., Inc.*,
    41 F. Supp. 2d 1350 (N.D. Ga. 1998) ............................................ 10

*Smith v. Stewart*,
    660 S.E.2d 822 (Ga. Ct. App. 2008) ......................................... 14, 30

*Triangle Pubs., Inc. v. Chumley*,
    317 S.E.2d 534 (Ga. 1984) ............................................................ 14

*Veritas v. Cable News Network, Inc.*,
    121 F.4th 1267 (11th Cir. 2024) ................................................... 24

*Weaver v. Millsaps*,
    898 S.E.2d 239 (Ga. 2024) ...................................................... 27, 29

Other Authorities

28 U.S.C. § 1404(a) ................................................. 8, 9, 10, 11

O.C.G.A § 9-11-15 (c) ............................................................... 30

O.C.G.A. § 16-10-20 .................................................................. 21

O.C.G.A. § 9-2-61 ...................................................................... 29

5

Rules

Fed. R. App. P. 27(d)(2)(A) ................................................................ 34

Fed. R. App. P. 32(g) .......................................................................... 34

Fed. R. Civ. P. 32(a)(5) ....................................................................... 34

Fed. R. Civ. P. 8(d) .............................................................................. 31

L.R. 3 ........................................................................................................ 9

30302970v1 97410.002.00

## PRELIMINARY STATEMENT

Appellee's Brief reflects a fundamental misunderstanding of the Rule 12(b)(6) standard. A motion to dismiss for failure to state a claim is not a vehicle for resolving factual disputes or jury questions. The question is not whether Raffensperger disagrees with the facts as alleged, or even whether an alternative interpretation of the facts exist; instead, the only issue for this Court is whether those facts, taken as true and viewed in the light most favorable to Pick, *plausibly allege* a claim for relief. They do—on every required element of both defamation and false light. Specifically, Pick's Complaint plausibly alleges that Raffensperger knowingly misrepresented her presentation of the State Farm Video— falsely accusing her of deception, defaming her, and acting with actual malice—allegations sufficient to survive a motion to dismiss.

Raffensperger's revision of the pleaded facts to excuse his own intentional misrepresentations highlights the error in the trial court's decision to grant his Rule 12(b)(6) motion. While Raffensperger may disagree with Pick, his disagreement does not render her allegations implausible. Fact issues, of course, are for a jury to resolve after discovery, not matters to be prematurely dismissed by a judge—

7

particularly one who never should have heard this case—and certainly not to be determined by this court.

Raffensperger's defense that venue was proper in the Atlanta Division upends the venue process. Raffensperger, as defendant, had the burden to satisfy the legal standard under 28 U.S.C. § 1404(a) to justify moving the case from the Gainesville Division, a proper venue; instead, however, the trial court saddled Pick with the burden to justify restoring the proper venue in which she filed—and did so without the benefit of a Motion to Transfer, or factual showing. The court's sua sponte transfer disregarded due process, Local Rule 3.1(B)(3), 28 U.S.C. § 1404(a), and settled law.

In his brief Raffensperger makes a concerted attempt to distract the Court from the only issue before it—whether Pick plausibly pled that Raffensperger's statements in *Integrity Counts* are of and concerning her, false, and made with actual malice. Rather than address plausibility, however, Raffensperger points this Court away from his defamatory statements toward non-sequiturs and non-parties: neither Rudy Giuliani's tweets nor a January 2, 2021 phone call (to which Pick was not a party) have any bearing on whether Pick's Complaint plausibly alleges

8

her claims. This Court should disregard Raffensperger's endless references to irrelevant statements of third parties and unrelated events. Because Pick plausibly pled the elements of her defamation and false light claims, the trial court erred in granting Raffensperger's 12(b)(6) motion.

## ARGUMENT

### I.    The improper transfer from Gainesville to Atlanta violated local rules and Pick's due process rights.

Raffensperger's defense of the Atlanta Division venue disregards Local Rule 3.1(B)(3), misstates the legal framework for divisional venue, and shifts the burden to restore proper venue to Pick. [Raffensperger Response Brief], p. 44-47.

Raffensperger concedes that *Integrity Counts* was sold in the Gainesville Division—the same division where Pick filed suit. *See id.* That alone satisfies Local Rule 3.1(B)(3), which provides that a civil action "must be filed in a division of the district wherein the activity occurred." The rule says "a" division—not "the" division—making clear that venue may lie in more than one division and that plaintiffs may choose among them. L.R. 3.1(B)(3), NDGa. Thus, without question, venue was proper in Gainesville.

9

Pick properly filed her complaint in the Gainesville Division under Local Rule 3.1(B)(3).  The burden to justify a discretionary transfer lies with the party seeking transfer—not with the party seeking to maintain the original forum.  *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989) ("[I]n the usual motion for transfer under section 1404 (a), the burden is on the movant to establish that the suggested forum is more convenient."); *Doe v. A360 Media LLC*, 2023 WL 11796095 at *3 (N.D. Ga.) (under 28 U.S.C. § 1404, "movant bears the burden of showing that transfer is appropriate" and "[t]hat burden is not light").  Moreover, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'"  *Moore v. McKibbon Bros., Inc.*, 41 F. Supp. 2d 1350, 1356 (N.D. Ga. 1998) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  Here, Pick filed in a proper venue, and the applicable rules respect her choice.

Furthermore, Raffensperger did not seek to transfer venue—had he done so, he was unlikely to have met the 28 U.S.C. § 1404(a) standard, so that any motion would have been denied.  Instead, the transfer from Gainesville to Atlanta occurred sua sponte, without a motion, and without giving Pick an opportunity to respond.  [Dkt. 5].  Rather than

10

assessing whether Raffensperger or the court met the burden to disturb Pick's presumptively proper venue choice, Raffensperger improperly faults Pick for not justifying why the case should be returned to its original, proper forum. [Raffensperger Response Brief], p. 46; *Internap Corp. v. Noction Inc.*, 114 F. Supp. 3d 1336, 1339 (N.D. Ga. 2015) (acknowledging that nine factor test should be conducted even when a court initiates transfer).

This Court should reject Raffensperger's attempt to flip the § 1404(a) burden. Pick's venue choice was proper, and nothing in the record justifies overriding it. Because venue was proper in the Gainesville Division, the District Court erred in sustaining the transfer of the case to the Atlanta Division. At a minimum, due process required that Raffensperger file a Motion to Transfer Venue, Pick had an opportunity to respond and be heard *before* the case was transferred to the Atlanta Division.

30302970v1 97410.002.00

## II.    Pick plausibly alleged claims for defamation and false light.

### A.    Raffensperger failed to address the plausibility of Pick's Complaint; at best, he raised an alternative factual interpretation of *Integrity Counts*, underscoring the trial court's error.

A Rule 12(b)(6) motion "admits the facts alleged in the complaint but challenges the plaintiff's right to any relief based on those facts." *Id.* At this stage, the Court must accept the facts alleged in the Complaint as true, view them in the light most favorable to Pick, and resolve all reasonable inferences in her favor.

Here, however, Raffensperger instead rewrites the facts, then argues for dismissal based on his selective revision of *Integrity Counts*. Even assuming his alternative narrative were plausible (it isn't), the fact that he presents a competing version of events underscores, rather than undermines, the lower court's error in resolving a factual dispute at the pleading stage.

To survive dismissal, a complaint need only contain factual matter sufficient to plausibly allege a claim for relief.  The plausibility standard is not high; in contrast, sustaining a dismissal requires a heightened showing:  "[D]ismissal cannot be upheld unless it appears beyond doubt that the plaintiffs would not be entitled to recover under any set of facts

12

they could prove in support of their claim." *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).

Applying this standard, Pick has plausibly alleged each defamation and false light element, and the case must, therefore, proceed to discovery.

> **B. Pick plausibly alleged that Raffensperger's defamatory statements are "of and concerning" her, and Raffensperger's insistence that *Integrity Counts* targets only Giuliani contradicts the plain text and cannot defeat those allegations at the pleading stage.**

Pick plausibly pled that Raffensperger's defamatory statements are "of and concerning" her. The trial judge seemed to agree during oral argument, noting that, "I do understand and appreciate the arguments that Pick was not referenced directly. But under these circumstances that were prevented - - presented, excuse me, I think it's pretty compelling, the implication that we are talking about her."[1]

Pick's Complaint alleges that Pick—and only Pick—presented the Video at the heart of *Integrity Counts* to the Georgia legislative subcommittee so that the statements can only be attributed to her. [Dkt.

---

[1] Transcript of Motions Proceedings before the Hon. Eleanor L. Ross, United States District Judge (November 21, 2024), p. 41, lines 9-19, Case 1:24-cv-01607-ELR (January 21, 2025).

30302970v1 97410.002.00

23], ¶ 73.  And anyone who either read the transcript or watched the publicly available video (a minimal step that the author of *Integrity Counts* would do to gather and confirm facts) would be aware of that fact. [Dkt. 23], ¶¶ 147, 156-163.  Indeed, not only did Pick's acquaintances and friends from around the country contact her about her Video presentation, so did numerous top media outlets—they easily identified Pick as the Video's presenter.   [Dkt. 23], ¶¶ 147, 156-163.   Those allegations, taken as true, support Pick's pleading that the statements are "of and concerning her."  *See Smith v. Stewart*, 660 S.E.2d 822, 829 (Ga. Ct. App. 2008). In fact, Raffensperger arguably judicially admitted that the defamatory statements are about Pick—in his Motion to Dismiss, Raffensperger repeatedly names Pick as the Video's presenter.[2]

In this Court, however, Raffensperger argues that his statements were directed at Giuliani, not Pick.[3]  But in his brief, Raffensperger confirmed that the derogatory statements were directed at the Video's presenter: "the video segments shown were misleading and incomplete,"

---

[2] *See* oral argument of Pick counsel J. Mitch Little, *Id.* at p. 29, lines 1-17.

[3] This argument is Raffensperger's only distinction in response to *Andrews v. D'Souza*, 696 F. Supp. 3d 1332, 1352 (N.D. Ga. 2023); *Holmes v. Clisby*, 45 S.E. 684, 686 (Ga. 1903); *Triangle Pubs., Inc. v. Chumley*, 317 S.E.2d 534, 537 (Ga. 1984); *Bell v. Johnson Pub. Co., LLC*, 2018 WL 357888, *4 (M.D. Ga. Jan. 10, 2018).

14

"the excerpts [shown] were misleading and incomplete," and the Video was presented in a "selective" manner to "show the opposite of reality."[4]

Raffensperger does not dispute Pick's role as the sole presenter of the Video featured in *Integrity Counts*, nor could he—or any reader familiar with the transcript, press coverage, or Video itself (and surely Raffensperger reviewed the presentation before publicly maligning it and its presenter) could come to no other conclusion. Raffensperger indisputably implicates the Video's presenter and as plausibly alleged (and undisputed), only Pick presented the Video.[5]

Raffensperger cites *McBeth* for the "general rule" that a person is precluded from recovering for a defamatory statement made about another, even if the statement indirectly inflicts some injury on the party seeking recovery. *McBeth v. United Press Intern., Inc.*, 505 F.2d 959, 959-60 (5th Cir. 1974). In *Mcbeth*, the Fifth Circuit affirmed dismissal of a defamation claim brought by a deceased woman's parents on behalf of her estate and minor son; the estate and son sued a newspaper after it

---

[4] [Dkt. 25-1], p. 138.

[5] Raffensperger disingenuously implies that he believed Giuliani presented the Video; however, Pick presented the Video, answered questions, then gave concluding remarks, ending her participation. Only then did the Chair recognize Giuliani—who was not and did not claim to be affiliated with Pick—and asked for his thoughts. This chain of events would be evident to anyone reviewing the Video or transcript.

15

falsely reported that the woman was pregnant at her death. *Id*. The court held that the decedent's estate lacked standing because under Louisiana law, defamation claims do not survive to the estate. *Id*. at 960. Because the complaint failed to allege malice, the court also rejected the claim brought on behalf of the son, further noting that defamation is a personal tort, and the statement that the decedent was pregnant and unwed could not apply to her minor son. *Id*. In contrast, Raffensperger's false statements did not target a single individual, but instead described multiple individuals: "Giuliani *and other lawyers* for President Trump *presented witnesses and a video* that had been deceptively sliced and *edited so that it appeared to show the exact opposite of reality*." [Dkt. 25-1], p. 138 (emphasis added). Raffensperger's brief pretends that the words "*and other lawyers*" and "*witnesses*" in reference to the Video's presenter simply do not exist and asks this Court to do the same. [Dkt. 23], ¶ 112. Further, the Complaint alleges actual malice. *See* [Dkt. 23], ¶¶ 5, 56, 58, 68, 72.

Raffensperger's reliance on *Cox Enterprises v. Bakin*, 206 Ga. App. 813 (1992) and *Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002) is also misplaced. In *Bakin*, the plaintiff challenged 31 separate newspaper

16

articles written by different journalists over a two-year period arguing that when read together, they falsely, maliciously and recklessly reported that plaintiff, an ER doctor, failed to provide proper treatment to a patient, causing him to bleed to death. *Bakin*, 206 Ga. App. at 813-14. The court, after reviewing the articles and deposition testimony, concluded at the summary judgment stage (with the benefit of full discovery) that the average reader would not conclude that plaintiff carelessly let the patient bleed to death. *Id.* at 816. In reaching this conclusion, the court noted that 29 of the articles did not refer to plaintiff specifically or by innuendo and that the 2 articles that named him did not assert that he engaged in intentional wrongdoing. *Id.*

Here, the libelous statements were made in a single book dedicated to painting Raffensperger's opposition as liars. Although the book does not mention her name, Pick plausibly alleged that Raffensperger's statements regarding the State Farm Video referred to her, accused her of intentional deception, and were not substantially true. *See generally* [Dkt. 23]. Those allegations are entitled to a presumption of truth at the pleading stage. *Crowe*, 43 F.3d at 203. The statements in *Integrity Counts* unmistakably refer to the Video's presenter, who could only be

17

Pick,  and accuse her of knowingly misleading lawmakers.  [Dkt. 23], ¶ 73.  Even if Raffensperger now offers a different interpretation of his own words, that only proves why the claim should not have been disposed at the pleading stage: when a statement "is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." *Bakin*, 206 Ga. at 816 (internal quotations omitted).

Raffensperger likewise misstates the holding in *Feldt*—contrary to his assertion that this Court rejected all of the defamation claims that did not "specifically mention" the plaintiff's website, the Court instead focused on whether the plaintiff was reasonably identifiable from the statements, even if not named. *Feldt*, 304 F.3d at 1129-30.  The Court reversed and remanded those claims to the trial court.  *Id.*

Here, *Integrity Counts'* description of the alleged bad actor as presenter of the State Farm Video could obviously be attributed to Pick, the Video's sole presenter.

18

**C.    Pick plausibly alleged that Raffensperger's statements were neither substantially true nor rhetorical hyperbole and are defamatory.**

**1.    Pick plausibly alleged that Raffensperger's allegations of deceptive editing to remove evidence are not figurative.**

To minimize the allegations against Pick in *Integrity Counts*, Raffensperger argues that statements like "sliced and diced" and "chopped up" were merely figurative. [Raffensperger Response Brief], 37. Though such phrases may carry a rhetorical tone in the abstract, *Integrity Counts* goes much further, alleging as fact that Pick intentionally removed clear evidence from the Video to "deceptively" show the Georgia State Legislature "the opposite of reality":

- Senator William Ligon chaired a Senate Judiciary subcommittee hearing for seven hours, where Rudy Giuliani and other lawyers for President Trump presented witnesses and a video that had been deceptively sliced and edited so that it appeared to show the exact opposite of reality.[6]

The book further alleges as "fact" that the presenter showed "a slice of video" that had "removed clear evidence":

- There can be no mistaking of the *facts*. Giuliani knows this. Yet he sat before members of the Georgia State Senate and *showed a slice of video that had removed the clear evidence*

---

[6] [Dkt. 25-1], p. 138.

that Fulton County election workers had protected the ballots and the process as required by law.[7]

These are not rhetorical flourishes, but direct accusations of knowing deception. Read in the context of Raffensperger's broader narrative in "Sixty Days of Disinformation" and his stated aim to correct the "historical record," the assertion that these statements were meant figuratively borders on absurd. *See* [Dkt. 25-1], pp. 100, 139-40.

As set out in Pick's Opening Brief (and largely ignored in Appellee's Brief) hyperbolic language is protected when no reasonable reader would understand it as stating actual facts. *See Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (defining "rhetorical hyperbole" as speech that "cannot reasonably be interpreted as stating actual facts about an individual."). But when, as here, the statements imply (and in fact, are intended to imply) a verifiable factual assertion, they are actionable. *See e.g., Equity Prime Mortgage, LLC v. Greene for Congress, Inc.,* 908 S.E.2d 717, 722 (Ga. Ct. App. 2024) (reversing district court and finding that statement that "EPM caved to the mob and fired" an employee was actionable because, in context, it implied the provably false factual

---

[7] *Id.*, p. 139.

30302970v1 97410.002.00

premise that the employee was fired due to her connection to a shooting); *Bennett v. Hendrix*, 325 Fed. Appx. 727, 739 (Ga. Ct. App. 2009) (concluding that a flyer featuring Bennett's mug shot and the text, "Should a Candidate for Sheriff finance his campaign using cash from convicted criminals?" implied the factual assertion that Bennett was a convicted criminal).

Here, *Integrity Counts* purports to present "historical record," rather than satire or commentary, and it accuses Pick of "deceptively" misleading a legislative body—a specific, serious charge that would constitute a crime under Georgia law. *See* O.C.G.A. § 16-10-20. But as Raffensperger was aware, Pick showed portions (due to time constraints) of the entire, unedited, uncut, unaltered video, moving through the more than 20 hours of footage in real time with the state legislators, who had the opportunity to view any and all of it at their pleasure. [Dkt. 23], ¶ 58. Raffensperger's statements falsely attribute to serious deception to Pick, causing her to be cast in a false light. His attempt to recast factual allegations as figurative speech to avoid liability cannot succeed under Georgia law.

21

### 2. Pick plausibly alleged that Raffensperger misrepresented Pick's use of the term "suitcases," amplifying a false narrative.

Raffensperger defends his challenged "suitcase" statements by suggesting that they merely referred to others who misused this term, but not Pick. [Raffensperger Response Brief], p. 38. However, the book makes no such distinction. This argument distorts the record..

As alleged in the Complaint, Pick clearly identified the containers shown in the Video as ballot boxes and explicitly stated she would refer to them as "suitcases." This term is consistent with terminology used by Fulton County election workers, whose affidavits using the term as such, had, upon information and belief, been served on Raffensperger as a Defendant in a lawsuit. [Dkt. 23], ¶ 179. The State Election Monitor uses the same term to describe containers in Fulton County elections in his report to the State Elections Board, which Raffensperger chaired. *Id.* Raffensperger knew this full context but failed to share it. *Id.* Instead, he adopted and amplified public attacks equating the presenters with irrational conspiracy theorists and even republished a journalist's statement that anyone who continued to believe the ballots were in suitcases "lives in a world outside of reason and reality." *Id.*, ¶¶ 87-88.

22

By omitting relevant facts, Raffensperger intended for readers to believe that the Video's presenter was not only deceptive, but irrational.

The district court's conclusion—that the book draws a line between informal users of the term and those alleging fraud—finds no support in the actual text of the book. Raffensperger made no such distinction. The omission of this key context—paired with the repeated references to "lies"—left readers with the clear implication that Pick was promoting baseless fraud claims. *Id.* That implication is not only false, but defamatory.

Raffensperger deliberately failed to correct a narrative he knew to be false and instead fueled the inference that Pick was dishonest—despite having full knowledge of her limited, accurate, and transparent use of the term.

The district court erred in holding that these statements were substantially true and dismissing Pick's claims.

## D.    Pick plausibly alleged actual malice.

Contrary to Raffensperger's contention that the Complaint lacks detail, Pick plausibly alleged specific facts supporting a reasonable inference that Raffensperger either knew his statements were false or

23

recklessly disregarded the truth.  [Dkt. 23], ¶¶ 66, 67, 113, 138-144, 149 & 178-179.  His changing story under oath alone demonstrates that he harbored serious doubts about the accuracy of his statements.

Pick alleged two plausible scenarios: either (1) Raffensperger reviewed the full hearing video before writing about it in detail, in which case he knew his statements were false, or (2) he chose not to  review it at all, in which case he acted with reckless disregard.  Either satisfies the actual malice standard.  *See Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1271 (11th Cir. 2024) (plaintiff plausibly alleged actual malice where defendant knew of contradicting facts).  If this case does not meet that standard, it is hard to imagine what would.

### 1.    *Pick plausibly alleged that Raffensperger either knew that his defamatory statements were false or recklessly disregarded their truth.*

Pick's Complaint alleges that Raffensperger had knowledge of and exposure to overwhelming evidence contradicting his statements—including the video itself, affidavits filed in litigation, and the State Election Monitor's report.  [Dkt. 23], ¶¶ 15–16, 62–67, 92.  He acknowledged—and all but bragged, in *Integrity Counts*—that he had the full run of tape.  *Id.* ¶ 92.  If Raffensperger reviewed the tape or

24

transcript, he could not have missed Pick's half-hour presentation on the Video.  [Dkt. 23], ¶¶ 4-6; 149.  Indeed, the fact that he took issue with the substance of the presentation establishes his knowledge.

Yet in a chapter titled "Sixty Days of Disinformation," Raffensperger brazenly described the presentation:

> "Rudy Giuliani and *other lawyers* for President Trump *presented witnesses and a video that had been deceptively sliced and edited* so that it appeared to show *the exact opposite of reality*." [Dkt. 23], ¶ 85, 96.

He then doubled-down, writing that the presentation:

> "…showed a slice of video that had removed the clear evidence" that ballots had been protected. [Dkt. 23], ¶ 139.

When under penalty of prosecution, while interviewing with the January 6 Committee, however, Raffensperger changed his story.  He abandoned all allegations of physical  alteration or removal of evidence from the Video, but argued that viewers simply didn't see the full video. [Dkt. 23], ¶ 96.  He finessed the "sliced and diced" accusation and merely claimed the "wrong impression" arose from what wasn't shown—not from deception.  *Id*.  Raffensperger's reversal under penalty of prosecution underscores that he harbored serious doubts about his original accusations in the book, which had been published less than a month

30302970v1 97410.002.00

earlier. *Id.*   His original claims were knowingly false or made with reckless disregard of the truth.

Raffensperger's alternative narrative—that the only relevant detail is what time the ballots went under the table—mischaracterizes the gist of Pick's presentation and has no bearing on the question before this Court.  [Dkt. 23], ¶ 91-93; *see* [Raffensperger Response Brief], pp. 8-9.  In her legislative testimony, Pick clearly stated that she didn't know what time that occurred.  Her point was that official announcements had led observers into believing counting had ended, when it had not. [Dkt. 23], ¶¶ 5, 56, 68, 72. Further, Fulton County did not give proper notice before restarting the count so that observers could return.

### 2.   *Raffensperger failed to distinguish Veritas*.

Raffensperger attempts to distinguish *Veritas* by arguing that, unlike in that case, the statements he made—that the State Farm Video segments presented were intentionally misleadingly incomplete—are true or substantially true, and thus he lacked actual malice. [Raffensperger Response Brief], p. 40 n.20.  This distinction, however, ignores that Pick plausibly pled that Raffensperger—a former legislator himself—knew that the Video was made available to the Legislature,

that Pick offered to show more video at the legislators' discretion, and that legislative time constraints—not manipulation of the facts—necessitated the truncated presentation of the more than 20-hour Video.[8] [Dkt. 23], ¶¶ 5, 56, 58, 68, 72.  Despite that knowledge, Raffensperger falsely stated that the presenter had "sliced and diced" footage to present "the opposite of reality"—a claim that accuses Pick of criminal conduct. [Dkt. 25-1], pp. 139-40.  His choice to make those claims, contrary to the publicly-available video showing the opposite or, equally as egregious, without consulting the publicly record, supports the inference of actual malice.  *Weaver v. Millsaps*, 898 S.E.2d 239, 243 (Ga. 2024) ("the question [of whether Millsaps acted with actual malice] is not whether Weaver actually made the threat, but whether Millsaps knew when she made her post that he had not made—or probably had not made—the threat.").[9]

---

[8] Raffensperger also cites *Moore v. Cecil*, 109 F.4th 1352, 1366 (11th Cir. 2024) for the proposition that "actual malice cannot be found where 'the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied.'"  Nevertheless, the Complaint does not allege that Raffensperger reasonably relied on previous reports and in fact, states the opposite—that Raffensperger knew his statements were false.

[9] Raffensperger makes no attempt to distinguish this case.

27

### 3. *Raffensperger knew that "suitcase" was common field jargon, and that Pick used it as such.*

Further, as Georgia's chief elections official, Raffensperger knew that "suitcase" was common field jargon in Georgia elections. Raffensperger was likewise briefed on the contents of the State Monitor's report, which confirmed that he, like Pick used the term "suitcase" to refer to containers used in Fulton County elections. *Id.* ¶¶ 62–67.

In addition, he would have known this as the state's chief elections official who conducted hundreds of investigations and as one who has run as a candidate many times in Fulton County. Yet Raffensperger threw fuel on the fire of the confusion by published derogatory statements that "suitcase" was a deceptive term. This enabled him to sell books, to become a media darling, to build his national brand, to unleash a prosecutor onto his critics, and to save his job.

In short, Raffensperger had all the relevant information contradicting his defamatory statements and chose to disregard it.. Pick's Complaint plausibly alleges that Raffensperger acted with actual malice; therefore, the trial court erred in dismissing under Rule 12(b)(6).

30302970v1 97410.002.00

## III. Pick's false light claim is timely under Georgia's renewal statute and the federal relation-back doctrine.

Raffensperger's statute of limitations argument misapprehends the interplay between Georgia's renewal statute and the federal relation-back doctrine in diversity cases. *See* [Raffensperger Response Brief], p. 42-44. Raffensperger incorrectly insists that Pick's false light claim is time-barred because it was not included in the original Texas Complaint. *Id.*

This conclusion contradicts well-settled Georgia law, including from this Court: in diversity cases, timely-filed claims may be renewed, and new claims added, provided they are "substantially the same" as those asserted in the original action. *See* O.C.G.A. § 9-2-61; *Jester v. Emerson Climate Techs., Inc.*, 849 Fed. Appx. 849, 851 (11th Cir. 2021); *Baker v. GOSI Enterprises, Ltd.*, 830 S.E.2d 765, 768 (Ga. Ct. App. 2019).

Pick's false light claim rests on Raffensperger's statements in *Integrity Counts*—the same statements as her defamation claim. *See* [Dkt. 1], ¶¶ 189-91. Pick's false light claim incorporates her prior allegations, then alleges that "Raffensperger's conduct created the existence of false publicity that depicts Pick as someone which she is not" and "the false light in which Raffensperger placed Pick would be highly

29

offensive to a reasonable person." *Id.* When claims share the same allegations and facts, an amended complaint adding such claims is not barred by limitations so long as they relate back. *See Curles v. Psychiatric Solutions*, 808 S.E.2d 237, 242 (Ga. Ct. App. 2017) (holding trial court erred in dismissing new claim brought in Third Amended Complaint filed after the Renewal Complaint because "[a] fair reading of these allegations shows that they are substantially similar. Thus, the trial court erred when it concluded that the negligence counts of the Third Complaint did not relate back under O.C.G.A § 9-11-15 (c).").

To overcome the substantial sameness between the false light and defamation claims, Raffensperger relies on *Smith v. Stewart*, 291 Ga. App. at 100 (quoting *Bollea v. World Championship Wrestling*, 271 Ga. App. 555, 556 n.1 (2005) (emphasis added)) arguing that a false light claim must be based on non-defamatory statements. But the court rejected precisely this argument, likewise based on *Smith v. Stewart*, in *Andrews v. D'Souza*, 696 F. Supp. 3d 1332, 1357 (N.D. Ga. 2023)[10]:

> Defendants argue that Andrews's false-light claim must be dismissed because it is based on the same allegations as his defamation claims.156 In support, they rely on *Smith v. Stewart*, 291 Ga.

---

[10] *See* [Raffensperger Response Brief], p. 44.

30302970v1 97410.002.00

App. 86, 100, 660 S.E.2d 822 (2008) and *Bollea v. World Championship Wrestling, Inc.,* 271 Ga. App. 555, 556–57 n.1, 610 S.E.2d 92 (2005). Those cases state that a false-light claim must allege a nondefamatory statement to survive, or it is simply a claim for defamation. But both *Smith* and *Bollea* were decided at summary judgment. While Andrews alleges that Defendants' statements about him were defamatory, the evidence may prove otherwise. A plaintiff may plead inconsistent claims and remedies. FED. R. CIV. P. 8(d); see also *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540 (11th Cir. 1986) ("Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency."); *Krass v. Obstacle Racing Media, LLC*, No. 1:19-CV-05785-JPB, 2021 WL 4824110, at *3 (N.D. Ga. Feb. 2, 2021) (holding, at the motion to dismiss stage, that a plaintiff may plead both a defamation claim and a false-light invasion of privacy claim); *Maples v. Nat'l Enquirer*, 763 F. Supp. 1137, 1143 (N.D. Ga. 1990) (similar). Defendants' argument does not provide a basis for dismissing this claim at the pleading stage.

Although false light and defamation claims overlap, false light claims can proceed when the same defamatory conduct is presented in a different legal theory to address distinct harms. *Id.*

Pick's false light claim relates back to the original timely-filed Texas complaint under the Georgia renewal statute and the federal relation-back doctrine and is thus, timely.

## CONCLUSION

The trial court erred in sustaining transfer from the Gainesville Division to Atlanta—because Gainesville was a proper venue under the applicable local rule, Pick's choice to file in Gainesville could not be disturbed, particularly in the absence of a motion, much less proof of the §14.04(a) factors. [Dkt 5]. This Court should vacate the District Court's order and remand so that the case can be returned to the Gainesville Division for resolution. Likewise, Pick plausibly alleged libel—Raffensperger's proffered alternative interpretation of recited "facts" at best creates a fact issue for the fact-finder's resolution. In short, Pick plausibly alleged (1) false, defamatory statements, (2) of and concerning her, that were (3) made with actual malice; likewise, she plausibly alleged a timely claim for "false light." [Dkt. 23], ¶¶ 174-188. The trial court's dismissal under 12(b)6 must be reversed.

Accordingly, Appellant respectfully requests that this Court:

1. Vacate the District Court's Order dismissing the case and affirming that Pick plausibly alleged her claims, and that her "false light" claim was timely filed.

30302970v1 97410.002.00

2.      Vacate the District Court's Order and remand with instructions to transfer the case to the Gainesville Division, where it was properly filed;

3.      Award Pick costs on appeal; and

4.      Award all other relief to which Pick may be entitled.

Respectfully submitted,

**CONDON TOBIN SLADEK SPARKS NERENBERG PLLC**

*/s/ Brandy R. Manning*
Brandy R. Manning
Texas State Bar No. 24029703
bmanning@condontobin.com
Aaron Z. Tobin
Texas State Bar No. 24028045
atobin@condontobin.com
Leah K. Lanier
Texas State Bar No. 24080068
llanier@condontobin.com
A. Gage Taylor
Texas State Bar No. 24123906
gtaylor@condontobin.com
8080 Park Ln., Suite 700
Dallas, TX 75231
Telephone: 214.265.3800
Facsimile:  214.691.6311

***Attorneys for Appellant***

30302970v1 97410.002.00

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to FED. R. APP. P. 32(g), the undersigned certifies that (1) this document complies with the word limit of FED. R. APP. P. 27(d)(2)(A) because, excluding parts of the document exempted by FED. R. APP. P. 32(f), this document contains [currently about 5,247 words, with the Summary and citations omitted—we get up to 13,000] (2) This document complies with the typeface requirements of FED. R. CIV. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365, Version 2402, in 14-point Century Schoolbook.

/s/ *Brandy R. Manning*
Brandy R. Manning

34

30302970v1 97410.002.00

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing *Reply Brief of Appellant* was served on the opposing party on August 6, 2025, as follows:

> Peter Canfield
> CANFIELD LAW LLC
> 34 Inman Circle NE
> Atlanta, Georgia 30309
> pccanfield@gmail.com
>
> Amber Carter
> GILBERT HARRELL
> SUMERFORD & MARTIN, P.C.
> 777 Gloucester St., Suite 200
> Brunswick, GA 31520
> acarter@ghsmlaw.com
>
> Charles Ryan Germany
> GILBERT HARRELL
> SUMERFORD & MARTIN, P.C.
> 675 Ponce de Leon Ave. NE, Suite 8500
> Atlanta, GA 30308
> rgermany@ghsmlaw.com

*/s/ Brandy R. Manning*
Brandy R. Manning

30302970v1 97410.002.00

## U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

### CERTIFICATE OF INTERESTED PERSONS AND
### CORPORATE DISCLOSURE STATEMENT (CIP)

Jacki Pick _____ *vs.* Bradford Jay Raffensperger _____ Appeal No. 24-14151-C _____

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed.  Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court.  **You may use this form to fulfill these requirements.**  In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. *(Please type or print legibly)*:

See ATTACHMENT A _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Submitted by:

Signature: /s/ Brandy R. Manning _____

Name: Brandy R. Manning _____    Prisoner # (if applicable): _____

Address: 8080 Park Ln., Ste. 700, Dallas TX 75231 _____

Telephone #: 214-265-3851 _____

Rev.: 2/23

**ATTACHMENT A**
**Pick V. Raffensperger (Appeal No. 24-14151-C)**

Canfield, Peter (defendant's counsel)

Carter, Amber (defendant's counsel firm)

Condon Tobin Sladek Sparks Nerenberg PLLC (plaintiff's counsel firm)

Germany, Charles Ryan (defendant's counsel)

Gilbert Harrell Sumerford & Martin P.C. (defendant's counsel firm)

Little, Jason Mitchell (plaintiff's counsel - pro hac)

Park, John J. (Jr.) (plaintiff's counsel)

Pick, Jacki (appellant)

Pikl, James A.  (plaintiff's counsel - pro hac)

Raffensperger, Bradford Jay (defendant)

Ross, Eleanor L. (district judge)

Scheef & Stone, LLP (plaintiff's counsel firm)

Taylor, Addison Gage (plaintiff's counsel - pro hac)

Tobin, Aaron Z. (appellant's counsel)

Manning, Brandy R. (appellant's counsel)

Lanier, Leah K. (appellants' counsel)


No publicly traded company or corporation has an interest in the outcome of the case or appeal.